UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID PEPIN,

    Plaintiff,

v.

    Case No. 2:19-cv-42

    Hon. Hala Y. Jarbou

WISCONSIN CENTRAL LTD.,

    Defendant.
_____/

# ORDER

Plaintiff David Pepin brings a claim under the Federal Employer's Liability Act, 45 U.S.C. § 51 *et seq.*, and under 28 U.S.C. § 1331. Before the Court is Defendant Wisconsin Central's motion to dismiss Pepin's action for failure to comply with this Court's order compelling him to produce relevant social media posts. (ECF No. 102.) The Court will also address Pepin's motion for reconsideration of the Court's June 2, 2021, order compelling production of a memory card. (ECF No. 157.)

## I. Background

In August 2020, Pepin restricted access to the content on his Facebook page by switching the account's privacy settings. (Plaintiff's Brief in Support of Response in Opposition to Motion to Dismiss, ECF No. 120, PageID.688.) On December 22, 2020, Magistrate Judge Maarten Vermaat granted Defendant's motion to compel "[a]ny and all [responsive] photographs of plaintiff participating in recreational activities, hobbies, vacations, family outings, and parties," along with responsive social media posts showing the same. (ECF No. 93, PageID.493.) Pepin's account remained private until January 2021, when he re-opened it to public view. (ECF No. 103, PageID.515.)

Defendant monitored Plaintiff's Facebook page both before and after he changed his security settings. It asserts that 73 posts present on the page before August 2020 no longer exist. Pepin admits that he cannot find two of these posts, and that he deleted a subsequent post made in May 2021. However, he claims that the remaining 71 posts are still present on his account.

Neither party contests that Pepin limited access to some of his posts. Instead, Defendant argues that the Court should characterize the security settings as intentional evasions of a disclosure order, and Plaintiff considers them part of a good-faith discovery dispute. Defendant Wisconsin Central accordingly asks for dismissal of this case as a sanction for Pepin's "intentional deception, false testimony, and attempts to commit fraud on the court." (ECF No. 103, PageID.518.)

On June 2, 2021, the Court held a hearing to resolve questions surrounding Defendant's motion for sanctions. At this hearing, Pepin introduced the argument that his lawyer was responsible for the changes to his Facebook account privacy settings. This lawyer has since withdrawn from the case.

Also at the hearing, Plaintiff agreed to produce a memory card which may contain photos relevant to the dispute. Plaintiff then moved for reconsideration of this agreement, arguing that the memory card contains irrelevant and sensitive information.

## II. Standards

### A. Sanctions Under Inherent Authority

Courts possess the inherent power to dismiss a case as a sanction for bad faith conduct. Fraud on the court is one species of bad faith sufficient to justify dismissal. In general, only the "most egregious misconduct, such as bribing a judge or members of the jury or fabricating evidence with the collusion of an attorney, will constitute a fraud on the court." *Coleman v. Shoney's, Inc.*, No. 99-3134-G, 2002 WL 1784289, at *2 (W.D. Tenn. July 9, 2002) (citing *Fierro*

*v. Johnson,* 197 F.3d 147, 154 (5th Cir.1999)). At least one district court in the Sixth Circuit has found that false testimony in a deposition does not justify *any* sanction where it is unclear whether the nonmovant "actually, in bad faith, gave false testimony." *Id* at *3.

However, if "bad-faith conduct in the course of litigation . . . could be adequately sanctioned under the [Federal] Rules [of Civil Procedure], the court ordinarily should rely on the Rules rather than the inherent power." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 50 (1991) (internal citation omitted). The Court clarifies that "if in the informed discretion of the court . . . [the] Rules are [not] up to the task, the court may safely rely on its inherent power." *Id.* A court need not separate out conduct sanctionable under the Rules and conduct only sanctionable under its inherent power. *Id.* In these hybrid cases, a court may rely solely on the inherent power. *Id.*

### III. Analysis

**A. The Court Will Not Rely on its Inherent Authority**

The conduct at issue in this case may violate the Court's December 22, 2020, order. Thus, Rule 37(b) provides an appropriate remedy. Because the Court should rely on its inherent power only when "neither the statute nor the Rules are up to the task," the Court will not rely on its inherent power in this case. *Id.*

Two further considerations weigh against relying on the Court's inherent power. First, to constitute a fraud on the court, the court must "actually be[] deceived." *Cone v. Tessler*, No. 16-11306, 2019 WL 1140223, at *5 (E.D. Mich. Feb. 15, 2019), *report and recommendation adopted*, No. CV 16-11306, 2019 WL 1139486 (E.D. Mich. Mar. 11, 2019). Here, it was not. Defendant moved to compel production of the material in question. (ECF No. 85, PageID.394.) Defendant then produced copies of the undisclosed posts to support its argument that Pepin concealed or deleted them. (ECF Nos. 103-5, 136-1.) These copies preserve the information that would otherwise be missing. Similarly, Defendant's paralegal testified at the sanctions hearing that she

3

had created a record of Pepin's past posts. She also monitored Pepin's Facebook page for new posts. These efforts to preserve Pepin's Facebook content began before any of the alleged manipulations. Thus, the Court appears to have an accurate understanding of the prejudice caused by Pepin's obfuscations.

Second, as referenced above, dismissals under inherent authority typically involve extreme conduct. *See, e.g.*, *Fharmacy Recs. v. Nassar*, 248 F.R.D. 507, 528 (E.D. Mich. 2008), *aff'd*, 379 F. App'x 522 (6th Cir. 2010) (dismissal for repeatedly falsified dates, numerous documents lost or destroyed, and other media either intentionally destroyed or lost). Although Pepin mirrors the behavior of the *Fharmacy Record* plaintiffs in some respects—downplaying Defendant's concerns about destruction of evidence as merely a litigation tactic—his misconduct is still less severe.

### B. Pepin's Conduct is Adequately Sanctionable Under Rule 37(b)

Rule 37(b)(2)(A) permits the Court to issue sanctions where a party fails to obey an order to provide discovery. *See* Fed. R. Civ. P. 37(b)(2)(A) (permitting further just orders in response to a party's failure to obey a discovery order). Here, Pepin cannot produce at least three posts arguably covered by the December 22, 2020, production order. He testified that, at the very least, the posts are not visible on his account. Two posts are photos that do not depict Pepin himself. The third is a text post referencing the presence of Narcan in Pepin's home. A further 71 posts are hidden, though allegedly not lost. Because at least some of the contested posts are covered by the Court's order, the Court may issue appropriate sanctions under the Rules.

### C. Dismissal is Not an Appropriate Sanction

The Sixth Circuit considers four factors before imposing dismissal as a sanction. These are: (1) whether the party's failure to comply is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions

were imposed or considered before dismissal was ordered.  *Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995).

The factors "have been applied more stringently in cases where the plaintiff's attorney's conduct is responsible for the dismissal." *In re Telxon Corp. Sec. Litig.*, No. 1:01CV1078, 2004 WL 3192729, at *20 (N.D. Ohio July 16, 2004) (quoting *Harman v. CSX Transp., Inc.*, 110 F.3d 366–67 (6th Cir.1997)).  This means that dismissal is "usually inappropriate" where the plaintiff's attorney, rather than the plaintiff, is at fault.  *Vinci v. Consol. Rail Corp.*, 927 F.2d 287, 287 (6th Cir. 1991) (quoting *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir.1980).

The *Vinci* presumption is at least partially active in this case.  At the June 2 hearing, Pepin alleged that his former counsel, Benjamin Wilensky, changed his security settings.  That said, Pepin has previously declared his involvement with the security setting decisions.  (Pl.'s Br. Supp. Resp. Opp'n Mot. Dismiss, PageID.688.)  And Pepin admits that he, not Wilensky, deleted one of his Facebook posts in May 2021.  Wilensky may have had a role in the adjustments to his Facebook account, but Pepin did not produce evidence to support this assertion.  Nor did Wilensky testify at the June 2 hearing.  The Court considers the four factors from *Jostens* in light of the foregoing facts.

### 1. Willfulness and Bad Faith

Pepin likely acted in bad faith, but to a degree that does not support dismissal.  Traditional examples of bad faith include filing a frivolous suit with an improper motive or committing a fraud on the court.  *See Plastech Holding Corp. v. WM Greentech Auto. Corp.*, 257 F. Supp. 3d 867, 872 (E.D. Mich. 2017).  Delaying or disrupting litigation may also show bad faith.  *Murray v. City of Columbus* 534 F. App'x 479, 484 (6th Cir. 2013) (citing *Chambers*, 501 U.S. at 45).  And in general, willfulness and bad faith require a clear record of delay or contumacious conduct.  *Phipps v. Accredo Health Grp., Inc.*, No. 215CV02101STACGC, 2017 WL 685579, at *4 (W.D. Tenn.

5

Feb. 21, 2017) (citing *Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013)). Contumacious conduct means "behavior that is perverse in resisting authority and stubbornly disobedient." *Id.* (quoting *Carpenter*, 723 F.3d at 704-705). Specifically, "[t]he plaintiff's conduct must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Barron v. Univ. of Mich.*, 613 F. App'x 480, 484 (6th Cir. 2015) (quoting *Carpenter*, 723 F.3d at 705). Pepin's actions regarding his Facebook account are inconsistent with unqualified good faith and do not reflect proper regard for the judicial process. Still, his evasions do not reach the level of perverse resistance or clearly demonstrate intent to thwart the judicial proceedings at hand.

The conduct in this case is less severe than in other cases where courts have granted dismissal. *See, e.g.*, *J&J Sports Prods., Inc. v. Brad's, Inc.*, No. 2:17-CV-11314, 2018 WL 4523124, at *2 (E.D. Mich. June 26, 2018), *report and recommendation adopted*, No. 17-11314, 2018 WL 3803754 (E.D. Mich. Aug. 9, 2018) (counsel absent from status conference, prolonged and unexplained failure to answer discovery requests, eventual responses to discovery that were unsigned and deficient); *see also Fharmacy Recs.*, 248 F.R.D. at 530 (intentional destruction of zip disc and other files, inconsistent testimony, late disclosure and misrepresentation of evidence, among other abuses). Yet, hiding material that may be subject to discovery is logically inconsistent with a good faith attempt to engage Defendant. *See, e.g.*, *Aslani v. Sparrow Health Sys.*, No. 1:08-CV-298, 2010 WL 4135036, at *7 (W.D. Mich. July 16, 2010) (only bad faith *logically and credibly explains* plaintiff's failure to appear at, explain his absence from, or reschedule his deposition).

Pepin's brief notes that he "has produced a remarkable amount of private material to Defendant" and that he would have produced the missing Facebook posts "if [Defendant] had said

6

something" about them. (Pl.'s Br. Supp. Resp. Opp'n Mot. Dismiss, PageID.691.) But "misconduct is not any less misconduct because it is executed under a veneer of good intentions." *Bass v. Jostens, Inc.*, 71 F.3d 237, 243 (6th Cir. 1995) (citing *Regional Refuse Systems, Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 156 (6th Cir.1988). Neither party contests that at least three posts are missing, and that 71 further posts are hidden from public view. Plaintiff argues that this is consistent with "at most . . . a good-faith dispute about the scope of the [December 22, 2020] order." (Pl.'s Br. Supp. Resp. Opp'n Mot. Dismiss, PageID.693.) Yet the appropriate means of resolving a dispute is through the Court, rather than concealing potential discovery material on Plaintiff's own initiative. Some good faith compliance with the discovery process would not excuse a bad faith attempt to win a discovery dispute, for example.

Further, Pepin claims that he limited access to his Facebook page to avoid "odd friend requests." (Pl.'s Br. Supp. Resp. Opp'n Mot. Dismiss, PageID.688.) His brief in opposition to Defendant's motion for sanctions then claims he limited access as part of a good-faith dispute over discovery. (*Id.*, PageID.693.) And at the June 2 hearing, Pepin advanced the theory that his prior counsel—Benjamin Wilensky—was responsible for the privacy setting alterations. This lack of clarity surrounding who manipulated the account and for what purpose, despite Pepin's awareness that the material could be relevant to discovery, demonstrates some level of recklessness.

Plaintiff contends that Wisconsin Central has engaged in a "game of gotcha," capitalizing on his failure to produce rather than trying to resolve the dispute in good faith. (*Id.*, PageID.686.) But Pepin sparked this game by hiding posts that he admits could be the subject of a good faith effort to obtain relevant material. (*Id.*) Wisconsin Central's access to the hidden or missing posts may mitigate the level of prejudice involved in this dispute, but it has little bearing on the question of Pepin's good faith.

7

And Pepin's effort to comply with the discovery order comes only after he restricted access to the posts. Pepin's reply brief notes that he and his counsel "identified those posts which they believed were responsive to the Court's order, and individually changed the audience of those posts to make each [one] public." (Pl.'s Br. Supp. Resp. Opp'n Mot. Dismiss, PageID.688.) But Pepin also states that when "Plaintiff changed his broad privacy settings to public," he believed that "all of the posts [would be] visible to all." (*Id.*) This suggests some awareness that the broad privacy settings are not the beginning and end of public access to Pepin's page. Making his account public is not solely cognizable as a good faith effort to comply with the Court's order.

Pepin's responsiveness argument cuts against a finding of willfulness. *See Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995) (a willful violation occurs whenever there is a conscious and intentional failure to comply with the court order). His behavior is largely explained by a desire to comply with the order, though Pepin himself has advanced alternative theories to explain his behavior. Pepin testified at the June 2 hearing that he deleted only one of the posts that Wisconsin Central identifies as missing. Two further posts are missing without explanation. The remaining 71 posts are allegedly limited to a specific audience on Pepin's Facebook account. However, Pepin has produced other material, including some from Facebook. Hiding these 71 posts is not inconsistent with Pepin's argument that he merely disagrees with Wisconsin Central about whether they are responsive to the Court's December 22, 2020, order.

### 2. Prejudice

Wisconsin Central's access to the missing posts suggests that there is minimal prejudice. That said, Defendant was "required to waste time, money, and effort in pursuit of cooperation" which Pepin was legally obligated to provide. (ECF No. 103, PageID.520 (quoting *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997)).) This suffices to show some amount of prejudice.

Pepin accurately states that "Defendant . . . downloaded the Facebook posts and located the videos it considers relevant to its defenses, and still has those posts and videos." (Pl.'s Br. Supp. Resp. Opp'n Mot. Dismiss, PageID.694.) It was Pepin's obligation to provide or dispute production of the posts, though, not Wisconsin Central's obligation to find them before Pepin concealed them. Defendant's access to the material in dispute limits but does not eliminate the prejudicial impact.

### 3. Notice

It is unnecessary to warn a party that knowingly false deposition testimony or "evasive discovery responses, or the concealment of highly relevant discovery, might compromise one's ability to continue to litigate in federal court." *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 512 (N.D. Ohio 2013) (citing *Freddie v. Marten Transport, Ltd.*, 428 Fed. App'x. 801, 804 (10th Cir. 2011)). Pepin's bad faith—regardless of its magnitude—weakens the importance of notice. *Harmon*, 110 F.3d at 367 (finding that a party should have notice before a court imposes dismissal, unless the derelict party has engaged in bad faith or contumacious conduct).

Pepin had notice that dismissal was possible. The "notice" factor functions primarily as a limit on the Court's ability to dismiss an action *sua sponte*. *See, e.g.*, *Harmon*, 110 F.3d at 368 (finding sufficient notice from the defendant filing a motion to dismiss); *see also S. Wabash Commc'ns, Ltd. v. Union Cty. Braodcasting Co.*, 69 F. App'x 285, 291 (6th Cir. 2003) (finding sufficient notice where appellees specifically requested dismissal as a possible sanction). Defendant's motion requests dismissal, satisfying the notice factor.

### 4. Consideration of Less Drastic Sanctions

Pepin has made some effort to comply with his obligations under the Rules of Civil Procedure. In these circumstances, this court generally resists the imposition of a default judgment as a discovery sanction. *See Chao v. Oriental Forest IV, Inc.*, No. 1:07-CV-618, 2009 WL 152108,

9

at *3 (W.D. Mich. Jan. 21, 2009). Similarly, "in the absence of contumacious conduct, a . . . sanction that would protect the integrity of pretrial procedures should be utilized rather than dismissal with prejudice." (Pl.'s Br. Supp. Resp. Opp'n Mot. Dismiss, PageID.696 (citing *Freeland v. Amigo*, 103 F.3d 1271, 1280 (6th Cir. 1997).) Because Pepin's conduct is not necessarily contumacious, the Court prefers alternative sanctions to dismissal of the action.

Similarly, this issue centers on only three posts. Contrast this with the dominant view among courts that dismissal is a drastic, rarely used sanction. *See, e.g.*, *Fharmacy Recs.*, 248 F.R.D. at 528 (calling dismissal the "ultimate sanction"). The Sixth Circuit has held that a district court should take "'measured' and 'gradual' steps" to the ultimate sanction of dismissal. *Freeland*, 103 F.3d at 1280. Although Pepin arguably demonstrated bad faith, imposed some prejudice, and had sufficient notice, moving immediately to dismiss is not a gradual step. *See Brown v. Tellermate Holdings Ltd.*, No. 2:11-CV-1122, 2015 WL 4742686, at *1 (S.D. Ohio Aug. 11, 2015) (refusing to grant default judgment to sanction "an appalling example of discovery run amok"). Given that the prejudice here primarily involves wasted time and money, alternative sanctions are more appropriate.

### D. Alternative Sanctions

Under Rule 37(b)(2)(C), "[a] court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, *caused by* the failure [to obey the Court], unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37 (emphasis added). The primary question for the Court, then, is what Pepin's discovery evasions cost Wisconsin Central. As other courts in the Sixth Circuit have done, "[t]he Court shall interpret the phrase[] 'caused by the failure' . . . conservatively and limit attorney's fees and costs to those that may be directly tied to the discovery abuse." *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 514 n. 35 (N.D. Ohio, 2013).

Pepin's failure to comply with the Court's discovery order was not substantially justified. The Court refused to dismiss as a sanction because Pepin credibly argues that the Facebook manipulations could be part of a legitimate discovery dispute. Although Pepin's conduct does not warrant dismissal, he did not act with complete good faith. As late as May 2, 2021, Pepin deleted a Facebook post that could be relevant to the current dispute. Pepin offers a justification: the post could suggest the presence of narcotics in his home. Still, the choice to delete a potentially discoverable post while litigating this motion for sanctions is concerning. And other posts remain hidden or missing, months after Pepin's initial Facebook manipulations. Accordingly, the Court will grant Defendant ten days to submit an estimate of costs involved in bringing the present motion for sanctions. This estimate should *not* include any cost attributable to the June 2, 2021, hearing.

Also before the Court is Plaintiff's motion for reconsideration of the Court's June 2, 2021, order that he produce the memory card on his phone to Defendant within 10 days. Given the issues with Pepin's Facebook account, the Court recognizes Defendant's argument that access to this card could prevent further disputes over missing and hidden material. Pepin's motion for reconsideration argues that the photos contained on the memory card are sensitive and thus should not be turned over to Defendant. (ECF No. 161, PageID.964.)

Plaintiff's privacy concerns appear legitimate. However, they are not sufficient to overcome Defendant's interest in potentially relevant discovery material. "If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37. The parties have linked production of the memory card to the dispute over Pepin's Facebook account. In this context, the memory card may be able to reduce the prejudice suffered by Defendant. The Court accordingly grants Defendant ten days to propose

11

a third party who will review the contents of the memory card and rejects Pepin's motion for reconsideration.

Defendant's selected third party will provide Defendant with any relevant, non-sensitive material from the card. Though the Court may act under Rule 37, this additional sanction is also within the scope of its inherent powers. *See Mitan v. Int'l Fid. Ins. Co.*, 23 F. App'x 292, 298–99 (6th Cir. 2001) ("A court may use [its] inherent power to sanction a party who "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.") (citing *Strag v. Bd. of Trs., Craven Community College*, 55 F.3d 943, 955 (4th Cir.1995)). Plaintiff is responsible to Defendant for the cost of this third party's services. *Id.*

## IV. Conclusion

For the foregoing reasons, the Court finds that sanctions are appropriate, but dismissal is not warranted. Defendant has ten days to submit an estimate of costs incurred in bringing the present motion. This estimate may not include any expense attributable to the June 2, 2021, hearing. Within these ten days, Defendant will also propose a third party to review the memory card. Pepin will produce the memory card to the third party and reimburse Defendant for the cost of the third party's services.

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss for fraud on the court (ECF No. 102) is **DENIED IN PART**. The Court will not dismiss this action, but will award Defendant attorney's fees and costs as described above and require submission of the memory card for viewing by a third party at Plaintiff's expense.

**IT IS FURTHER ORDERED** that, within ten days of the date of this Order, Defendant shall submit to the Court an estimate of the costs incurred in bringing its motion.

**IT IS FURTHER ORDERED** that, within ten days of the date of this Order, Defendant shall propose a third party to review the memory card.

**IT IS FURTHER ORDERED** that Plaintiff shall reimburse Defendant for the cost of the third party's services.

**IT IS FURTHER ORDERED** that Plaintiff's motion for reconsideration (ECF No. 157) is **DENIED**.

Dated:  July 26, 2021                         /s/ Hala Y. Jarbou
                                              HALA Y. JARBOU
                                              UNITED STATES DISTRICT JUDGE