UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID PEPIN,

    Plaintiff,

v.

    Case No. 2:19-cv-42

    Hon. Hala Y. Jarbou

WISCONSIN CENTRAL LTD.,

    Defendant.
_____/

## **OPINION**

Before the Court are various motions in limine filed by the parties in anticipation of trial. Motions in limine should address discrete evidentiary issues related to trial; they are not "procedural devices for the wholesale disposition of theories or defenses." *Dunn ex rel. Albery v. State Farm Mut. Auto. Ins. Co.*, 264 F.R.D. 266, 274 (E.D. Mich. 2009) (citation omitted). Accordingly, "[o]rders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).

### **I. Plaintiff's Motion in Limine #1**

Plaintiff moves to exclude Railroad Retirement Taxes from the calculation of his lost income. The standard rule in a Federal Employer's Liability Act (FELA) action is that the measure of recovery for lost wages is "after-tax income, rather than . . . gross income before taxes[.]" *Norfolk W. Ry. Co. v. Liepelt*, 44 U.S. 490, 493 (1980). Railroad employees are protected by the Railroad Retirement Act (RRA), 45 U.S.C. § 231 et seq., which allows them to qualify for retirement benefits similar to social security benefits. Under the Railroad Retirement Tax Act (RRTA), 26 U.S.C. § 3201 et seq., both railroad employees and their employers must pay taxes to

fund these retirement benefits. These taxes are calculated as a percentage of the employee's gross wage and are capped at certain amounts.

A number of courts have held that railroad retirement taxes are not subject to the rule in *Liepelt*, such that when the fact-finder is determining the railroad employee's lost income, it should *not* deduct these taxes from the employee's gross income. *See, e.g.*, *Norfolk W. Ry. Co. v. Chittum*, 468 S.E.2d 877, 882 (Va. 1996); *CSX Transp., Inc. v. Levant*, 410 S.E.2d 299, 303 (Ga. Ct. App. 1991), *rev'd on other grounds*, 417 S.E.2d 320 (Ga. 1992); *Norfolk S. Ry. v. Perkins*, 481 S.E.2d 545, 555 (Ga. Ct. App. 1997).

The Georgia Court of Appeals has explained that benefits received by an employee through the RRTA do not mitigate damages caused by an employer and should not reduce the employer's liability. Similarly,

> [t]he taxes paid by plaintiff into the railroad retirement fund are to fund his future retirement and are paid directly to him upon his retirement. Since the railroad retirement taxes would ultimately be paid directly to plaintiff upon his retirement, we find no error with the trial court's exclusion of this evidence or with the trial court's refusal to instruct the jury that plaintiff's net income means gross income minus all taxes including railroad retirement taxes.

*Levant*, 410 S.E.2d at 859-60.

Another rationale for excluding RRTA taxes from the calculation of net income is that it would be unfair to do so where, as here, the plaintiff is not claiming the lost value of his pension benefits as an item of damages. *See Maylie v. Nat'l R.R. Passenger Corp.*, 791 F. Supp. 477, 488 (E.D. Pa. 1992) ("It would be inappropriate to deduct from plaintiff's lost salary taxes that, in effect, represented plaintiff's contribution toward a pension without including, as an item of damages, the value of that pension."); *accord Rachel v. Consol. Rail Corp.*, 891 F. Supp. 428, 430 (N.D. Ohio 1995).

Defendant relies on cases that are distinguishable. In *Rachel*, for instance, the court rejected the plaintiff's attempt to calculate the loss of his pension benefits by looking at how much *his employer* would have paid in RRTA taxes because there was not a direct connection between that amount and the pension benefits the plaintiff would have received. *Rachel*, 891 F. Supp. at 430; *accord Adams v. Burlington N. R.R. Co.*, 865 S.W.2d 748, 751 (Mo. Ct. App. 1993). Plaintiff contends he is not asking for such a calculation in this case. He is not seeking damages for lost pension benefits and does not claim that the RRTA taxes that *Defendant* would have paid should be used to calculate that loss.

In *Madore v. Ingram Tank Ships, Inc.*, 732 F.2d 475 (5th Cir. 1984), the Fifth Circuit held that a "lost income stream must be computed after deducting the income taxes and social security taxes the worker would have paid had he continued to work," but that case does not discuss RRTA taxes. *Id.* at 479. Indeed, the RRTA is a different statute than the ones providing for income and social security taxes. Similarly, in *Boston & Maine R.R. v. Talbert*, 360 F.2d 286 (1st Cir. 1966), the First Circuit stated that evidence of a railroad employee's "income taxes and railroad retirement contributions were also properly excluded in determining the present value of [his] expectancy in his earning capacity." *Id.* at 291. But that court did not analyze the extent to which income taxes might differ from RRTA taxes.

The Supreme Court's decision in *BNSF Railway Co. v. Loos*, 139 S. Ct. 893 (2019), another case cited by Defendant, highlights the unique nature of RRTA taxes. There, the Supreme Court held that the plaintiff in a FELA case had to pay RRTA taxes (to be withheld by the employer) on the portion of a *judgment award* consisting of lost wages because the RRTA applies to "compensation" and an award for lost wages is taxable as "compensation" to the employee. *Id.* at 900. Thus, Congress apparently considered the possibility that a railroad employee would recover

3

lost wages and decided that the recoupment of those wages would be taxed in the year that payment was *received*, not the years in which the wages would have been earned. *See id.* at 899-901. Deducting the RRTA taxes that Plaintiff would have paid had he been working would amount to double taxation and would be inconsistent with the scheme created by Congress.

In contrast, when a plaintiff receives a damages award for personal physical injury, the regular income tax code *exempts* that award from taxable income. *See id.* at 903-04 (citing 26 U.S.C. § 104(a)(2)). Accordingly, it makes sense to deduct the income taxes that the plaintiff would have paid during the years he would have worked. Doing so is consistent with the income tax code and does not result in double taxation. Thus, the Court will grant Plaintiff's motion to exclude RRTA taxes from the calculation of Plaintiff's net income.

## II. Plaintiff's Motion in Limine #2

Plaintiff asks the Court to exclude any remarks or evidence that (1) plaintiff would have retired or would have been eligible to retire at the age of 60 with 30 years of service or (2) that railroaders generally elect to retire after 30 years of service at the age of 60. Plaintiff's lost future income stream is one potential element of damages, so his retirement age is relevant to that issue.

Plaintiff apparently intends to introduce his own testimony that he would have retired at the age of 67, and his damages expert will offer a calculation of lost wages based on that retirement age. However, Defendant would like to challenge that calculation by offering statistical evidence of when railroad workers typically retire.

Plaintiff argues that any evidence of when railroad workers typically retire is "an improper and veiled reference to a collateral source because the concept of retirement connotes a retirement benefit at the end of one's career." (Pl's Mot. in Limine #2, ECF No. 202, PageID.2027.) "It is a well established rule of damages that benefits received by plaintiff from sources wholly independent of and collateral to the tortfeasor will not serve to diminish any damages otherwise

recoverable." *Brumley v. Fed. Barge Lines, Inc.*, 396 N.E.2d 1333, 1339 (Ill. App. 1979). Retirement benefits are a collateral source of income. To avoid the possibility of jury confusion and prejudice, courts typically exclude evidence of retirement benefits in FELA cases, even when those benefits are offered solely for the purpose of demonstrating when a plaintiff is likely to retire. *See id.* at 1340; *Griesser v. Nat'l R.R. Passenger Corp.*, 761 A.2d 606 (Pa. Super. Ct. 1999); *Lee v. Consol. Rail Corp.*, 1995 WL 734108, at *5 (E.D. Pa. Dec. 5, 1995); *Finley v. Nat'l R.R. Passenger Corp.*, 1 F. Supp. 2d 440, 443 (E.D. Pa. 1998) ("evidence of plaintiff's receipt of pension benefits is prejudicial as a matter of law"); *see also Sullivan v. Chesapeake & Ohio Ry. Co.*, Nos. 90–1136, 90–1412, 1991 WL 216872, at *6 (6th Cir. Oct. 25, 1991) ("Evidence of collateral source benefits is not admissible in FELA actions because such evidence 'is readily subject to misuse by a jury.'" (quoting *Eichel v. N.Y. Cent. R.R. Co.*, 375 U.S. 253, 255 (1963)).

But assuming Defendant can provide a foundation for its statistical evidence, that evidence is admissible. It is not evidence of retirement benefits, and it does not improperly refer to such benefits or imply that they exist. There are many possible reasons that have nothing to do with pension benefits for why a person in a particular job might retire at a particular age. And other courts have permitted such evidence. *See, e.g., Giza v. BNSF Ry. Co.*, 843 N.W.2d 713, 725-26 (Iowa 2014) (noting that such "statistics give a norm as a frame of reference and allow the plaintiff to argue to the jury why he or she would deviate from that norm" and concluding that the court erred by excluding such evidence).

Accordingly, Plaintiff's motion will be denied. Although evidence of retirement benefits is generally not allowed in a FELA action, the statistical evidence at issue here is not evidence of such benefits. Moreover, the statistical evidence is relevant and not unduly prejudicial. Also, Defendant is free to argue that Plaintiff would have retired at an age earlier than 67 (and to question

Plaintiff's expert on that issue), so long as Defendant does not improperly refer to retirement benefits as the basis for that argument or those questions.

### III. Plaintiff's Motion in Limine #3

Plaintiff seeks to exclude statements or evidence "which might inform the jury regarding the production, non-production, or alleged deletion of any Facebook Posts, Facebook photos or anything else on social media." (Pl.'s Mot. in Limine #3, ECF No. 203, PageID.2030.) Plaintiff argues that his conduct during discovery is irrelevant to the underlying issues in the case; it does not make the fact of his injury or of Defendant's negligence any more probable.

Defendant responds that Plaintiff's conduct during discovery warrants jury instructions covering the Court's findings in its sanctions order and an instruction that the jury can make an adverse inference about Plaintiff's conduct.

The Court will grant Plaintiff's motion in part and deny it in part. Plaintiff's conduct during discovery is relevant in that it shows a lack of candor and a willingness to hide evidence that might undermine his claims regarding the extent of his injury. Furthermore, evidence of this conduct is not unduly prejudicial. Consequently, the Court will allow Defendant to introduce evidence of Plaintiff's conduct with respect to the deletion or concealment of his Facebook photographs and other social media posts.

However, the Court will not allow evidence that Plaintiff's conduct violated his discovery obligations. Plaintiff's compliance with the rules of discovery is not relevant. Nor will the Court instruct the jury regarding the Court's statements in its opinions and orders. The jury must draw its own conclusions from the evidence without relying on the Court's assessment of Plaintiff's conduct and compliance with discovery matters.

In addition, the Court will not instruct the jury to draw an adverse inference from Defendant's conduct. The Court has already sanctioned Plaintiff for his discovery violations; it

6

will not add an adverse inference instruction to that sanction. The prejudice to Defendant lay chiefly in its expenditure of time and money to investigate the missing posts and to obtain Plaintiff's compliance with his discovery obligations. For that reason, the Court's sanction required Plaintiff to compensate Defendant for those expenditures. A further sanction is not warranted. The jury can draw its own inferences from Plaintiff's conduct.

### IV. Plaintiff's Motion in Limine #4

Next, Plaintiff asks to exclude statements or evidence "which might inform the jury of . . . the Defendant's Motions to Compel or the Defendant's Motion to Dismiss [for Fraud on the Court.]" (Pl.'s Mot. in Limine #4, ECF No. 204, PageID.2034.) Plaintiff argues that this evidence is irrelevant and the Court agrees. Defendant responds as it did to Plaintiff's Motion in Limine #3.

Defendant's pre-trial motions are not relevant. And as discussed above, additional sanctions involving jury instructions are not warranted. Accordingly, the Court will grant Plaintiff's motion.

### V. Plaintiff's Motion in Limine #5

Plaintiff asks to exclude as irrelevant and prejudicial statements or evidence "which might inform the jury regarding Plaintiff's prior work records with Defendant prior to February 19, 2016, insofar as they pertain to discipline and performance." (Pl.'s Mot. in Limine #5, ECF No. 205, PageID.2038.) Also, the parties have apparently consented to a motion to exclude evidence "that Plaintiff was a good or bad employee, and that Plaintiff was either a safe or unsafe employee (except for the dates he was injured)." (*Id.*)

Defendant asserts that it cannot respond to this motion because Plaintiff has not identified the records he asks to exclude. For the same reason, the Court cannot assess whether they should be excluded. Accordingly, Plaintiff's motion will be denied.

### VI. Defendant's Motion in Limine No. 1

Defendant asks to exclude evidence and argument regarding the following:

1. Safer Tools and Methods of Work.

2. Evidence of Formal Investigation or Discipline (or lack thereof).

3. Any Reference to WCL as "Canadian National Railway," "Canadian National," or "Canadian National Railroad."

(Def.'s Mot. in Limine No. 1, ECF No. 206, PageID.2041.)

**A. Safer Tools and Methods of Work**

Plaintiff claims that his work environment was not reasonably safe because Defendant did not provide him with suitable tools to perform work throwing tie plates. Defendant argues that evidence regarding tools or other methods is irrelevant. Defendant relies on *McKennon v. CSX Transportation, Inc.*, 897 F. Supp. 1024 (M.D. Tenn. 1995) and other cases for the proposition that "the proper inquiry is whether the method prescribed by the employer was reasonably safe, not whether the employer could have employed a safer alternative method for performing the task." *Id.* at 1027.

However, these cases do not stand for the notion that alternative methods and tools are always irrelevant. Instead, they express the straightforward principle that "[t]he fact that there may have been an automated, or safer method, of work does not *automatically* render the chosen method unsafe or negligent for purposes of FELA." *Id.* In other words, a reasonably safe work environment does not become unsafe merely because alternatives existed to make it even safer. For instance, "where '[t]he task at which [plaintiff] was injured was one that could be safely done by the method which he was told to use and was using,' the employer is not negligent by refusing to provide plaintiff with an automated means for accomplishing his task." *Id.* (quoting *Soto v. S. Pac. Transp.*, 644 F.2d 1147, 1148 (5th Cir.1981)); *Seymour v. Ill. Cent. R.R. Co.*, 25 F. Supp. 2d

8

734, 738 (S.D. Miss. 1997) ("[T]he mere existence of other alternatives does not establish negligence on the part of the railroad . . . where such aids are not necessary for an employee to perform the job safely.").

Conversely, if the task at hand was not safe in the manner assigned to the plaintiff, then evidence of safer alternatives is relevant. For instance, in *Ross v. Chesapeake & Ohio R.R. Co.*, 421 F.2d 328 (6th Cir. 1970), the plaintiff had to move an oil drum weighing 600 pounds without help and without a cart to move it. *Id.* at 329. The drum fell over and he injured his back. The Court of Appeals affirmed the jury's conclusion that the Defendant was negligent for "failure to provide oil and necessary equipment and adequate help for the safe performance of work." *Id.* at 330. The court also stated that "the alleged failure of the appellee to *supply this oil where needed*, or *the necessary help*, or *the equipment to move the oil by himself*, created questions which were properly submitted to the jury." *Id.* (emphasis added); *see Lewis v. CSX Transp., Inc.*, 778 F. Supp. 2d 821, 840 (S.D. Ohio 2011) (citing similar cases). Those statements contradict Defendant's assertion that alternative methods and tools are irrelevant and inadmissible. *Cf. Stone v. N.Y., Chicago, & St. Louis R.R. Co.*, 344 U.S. 407, 408-09 (1953) (considering three alternative methods for pulling worn railroad ties).

Here, Plaintiff ostensibly claims that the task given to him (moving up to 1,000 tie plates by hand, without tools) could not be safely done without injury. Of course, a jury will have to decide whether that was the case, but if they agree with Plaintiff, then the existence of alternative methods and tools is relevant to the question of whether Defendant was negligent for failing to make the task reasonably safe. *See Rodriquez v. Delray Connecting R.R.*, 473 F.2d 819, 821 (6th Cir. 1973) ("What is 'reasonably' safe is affected to some extent by the alternatives." (citation omitted)). Thus, this aspect of Defendant's motion will be denied.

**B. Evidence of Formal Investigation or Discipline (or Lack Thereof)**

Defendant asks to exclude on relevance grounds evidence that it "did or did not discipline" Plaintiff and that it chose not to conduct a formal investigation following Plaintiff's injury. (Def.'s Br. in Supp. of Mot. in Limine No. 1, PageID.2045.)  Defendant relies on three cases that do not support its argument.

First, in *Chapman v. Ensco Offshore Co.*, 463 F. App'x 276 (5th Cir. 2012), the district court held that an incident investigation report was inadmissible hearsay and the Court of Appeals upheld that decision.  *Id.* at 280-81.  But here, Defendant does not raise a hearsay objection.

Second, in *Johnson v. Rockwell Automation, Inc.*, No. 1:06CV00017, 2009 WL 1748344 (E.D. Ark. June 17, 2009), the court held that an incident report was inadmissible because it would not be helpful for the jury to understand how the accident occurred and it was not based on independent knowledge about the incident.  *Id.* at *2.  Those arguments are not being raised here.

Third, in *Osborne v. Pinsonneault*, No. 4:07CV-002, 2009 WL 1046008 (W.D. Ky. Apr. 20, 2009), the court held that "post-accident personnel actions," including "counseling, supplemental training, additional road test, and six month disciplinary probation" were not relevant to prove negligence *by the employee*, or negligence on the part of the employer with respect to training or supervising the employee prior to the accident.  *Id.* at 3.  Defendant has not alleged the existence of similar evidence in this case, offered for the purposes discussed in *Osborne*.  Thus, that case does not apply.

Plaintiff argues that the absence of an investigation resulting in a finding that Plaintiff violated the company's rules is relevant to rebut an affirmative defense raised by Defendant that Plaintiff's injury was caused by his own negligence.  (*See* Def.'s Answer ¶ 2, ECF No. 5.)

At this stage, the Court is not persuaded that the foregoing evidence should be excluded.  Accordingly, this aspect of Defendant's motion will be denied.

### C. Reference to Defendant as Canadian National Railway, Canadian National, or Canadian National Railroad.

Defendant's tradename is CN. It wants to exclude any references to its parent company, Canadian National Railway, who is not a party to the lawsuit. Defendant asserts that such references are irrelevant and that any probative value is outweighed by the danger of unfair prejudice. Plaintiff responds that some of his work records and one of Defendant's rule books refer to CN and "Canadian National."

The Court will not exclude these references. They are relevant to the extent they appear in the parties' records. Their probative value is not outweighed by the danger of unfair prejudice. Accordingly, this aspect of Defendant's motion will also be denied.

For the foregoing reasons, Defendant's Motion in Limine No. 1 will be denied.

### VII. Defendant's Motion in Limine No. 2

Defendant asks the Court to exclude evidence or argument that it was negligent because it failed to

> (1) provide [Plaintiff] a tie plate hook to help move tie plates on May 5, 2017, (2) properly store tie plates by allowing salvageable and unsalvageable materials to accumulate in one pile, and (3) comply with Engineering Track Standard 3.0 related to minimum standards for tie plate reuse.

(Def.'s Mot. in Limine No. 2, ECF No. 209, PageID.2052.)

Defendant contends that Plaintiff asserted these issues for the first time in response to Defendant's motion for summary judgment. According to Defendant, these "claims" were "not disclosed in [Plaintiff's] Complaint, Interrogatory Answers, or deposition testimony." (*Id.*) Defendant contends that it would be prejudiced by having to respond to theories that it could not have anticipated.

Defendant points to one of Plaintiff's interrogatory responses from October 7, 2019, which stated:

11

> Defendant was negligent because Plaintiff was, among other things, required to work beyond his physical capabilities, that there was no legitimate purpose for the work, that Plaintiff was required to perform the work manually although a magnet or boom truck were available in the area to perform the work, . . . that Defendant's supervisor made unreasonable demands of Plaintiff and failed to supervise the work reasonably, that Plaintiff was not allowed to use adequate or safe methods of performing the work, and that an appropriate level of manpower was not provided to perform the work.

(Pl.'s Answers to Def.'s First Interrogs., ECF No. 209-1, PageID.2060-2061.)

Plaintiff's interrogatory response is somewhat general, but it arguably encompasses the theories mentioned by Defendant above. Plaintiff contends that a tie plate hook is a tool that would have assisted his efforts, but Plaintiff's supervisor required him to move the tie plates manually. Also, the fact that Plaintiff had to move tie plates that did not satisfy engineering standards for salvageable plates falls under the no-legitimate-purpose theory. The last theory, Defendant's alleged practice of allowing piles of salvageable scrap to mix with unsalvageable scrap, is simply background information for the working conditions that Plaintiff faced that day.

In addition, Defendant cannot contend that these theories have caught it by surprise because Plaintiff's attorneys questioned several of Defendant's employees about facts pertaining to each of the theories at their depositions on June 15, 2021, the day before discovery ended. (*See* Gereau Dep., ECF No. 166-9; Anderson Dep., ECF No. 174.)

Finally, Defendant offers no case law supporting their contention that the Court should exclude Plaintiff's evidence in these circumstances. Defendant relies on cases holding that a "plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Gilmore v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *accord Shanahan v. City of Chicago,* 82 F.3d 776, 781 (7th Cir.1996); *Jocham v. Tuscola Cnty.*, 239 F. Supp. 2d 714, 732 (E.D. Mich. 2003). Those cases are factually and legally distinguishable. For instance, none of them considered a motion to exclude evidence.

In *Gilmore*, the plaintiff sought to assert a new claim for contract liability that was not alleged in the complaint when responding to a motion for summary judgment. *Gilmore*, 382 F.3d at 1315. In contrast, Plaintiff is not asserting a new claim; the theories referenced by Defendant are simply facts that purport to buttress Plaintiff's negligence claim.

In *Shanahan*, the plaintiff expressly attempted to "amend" his complaint through a footnote in his response to a motion for summary judgment by asserting facts that completely altered the factual basis for his claim. The court held that the amendment was futile because it was both procedurally improper and meritless. *Shanahan*, 82 F.3d at 781. In contrast, the theories referenced by Defendant are not amendments to Plaintiff's negligence claim. They all fall within his claim that Defendant failed to exercise its duty of ordinary care with regard to his working conditions.

Similarly, in *Jocham*, the plaintiff attempted to save his complaint from dismissal by asserting facts that were not present in his complaint. *Jocham*, 239 F. Supp. 2d at 732. That is not the situation here. In short, the Court is not persuaded that this evidence should be excluded. Thus, Defendant's Motion in Limine No. 2 will be denied.

**VIII. Defendant's Motion in Limine No. 3**

Defendant's Motion in Limine No. 3 raises the same issue addressed above regarding the deduction of RRTA taxes when calculating Plaintiff's lost income. For the reasons discussed above, the Court finds that such taxes should not be deducted.

Defendant's motion offers an alternative that would avoid the double-taxation problem that the Court mentioned. Defendant proposes to deduct RRTA taxes on wages only to the extent that those wages exceed the yearly cap on which a judgment would be taxed. That solution, however, runs contrary to the RRTA, which only taxes a lost wages award in the year that it is received. Thus, if Plaintiff wins a judgment for lost wages in this case, he will be liable for RRTA taxes only

in the year he received payment of that judgment. He will not be liable for those taxes in other years.

Defendant also proposes to deduct unreimbursed business expenses that Plaintiff would have incurred and employee health benefits that he has already received, and continues to receive, from Defendant. Plaintiff apparently does not contest the latter deductions. As Defendant does not identify specific evidence that should be excluded, its motion will be denied.

## IX. Defendant's Motion in Limine No. 4

Defendant would like to prohibit Plaintiff from cross-examining Defendant's medical expert, Dr. Charles Taylon, about comments that a trial court made concerning his testimony in a 2014 bench trial in Nebraska, *Moreno v. City of Gering*, 878 N.W.2d 529 (Neb. 2016). In that testimony, Dr. Taylon opined, contrary to the opinion of the plaintiff's expert, that the injured plaintiff should not be entitled to certain damages related to an accident because the cervical fusion surgery that the plaintiff received was unnecessary. *Id.* at 533. The trial court entered judgment in favor of the plaintiff, concluding that Dr. Taylon had acted "as much an advocate as an unbiased, impartial witness." *Id.* at 534. The Nebraska Supreme Court approved these findings. Defendant notes that those comments reflect that particular court's opinion of Dr. Taylon's credibility in the circumstances of that case. In addition, Defendant contends that Dr. Taylon does not intend to offer an opinion that Plaintiff's surgery was unnecessary, so the trial court's comments are irrelevant and unduly prejudicial.

Plaintiff responds that bias is a permissible basis for impeachment, and that parties have significant latitude in cross-examining witnesses for bias.

At this stage, the Court finds that the court's comments in *Moreno* may have some relevance to Dr. Taylon's overall credibility, but the relevance of those comments is substantially outweighed by the danger of unfair prejudice. It will be the jury's responsibility to weigh the

14

evidence in this case and to determine Dr. Taylon's credibility for itself. A credibility determination made by a different fact-finder in a different case with different circumstances has little bearing on the credibility of Dr. Taylon's testimony in this case, and there is a risk that the jury will put too much weight on the opinion of the judge in *Moreno* when making their assessment.

Thus, the Court will grant Defendant's Motion in Limine No. 4. Plaintiff will not be permitted to introduce the Nebraska court's statements about Dr. Taylon's credibility.

### X. Defendant's Motion in Limine No. 5

Defendant asks the Court to instruct the jury about Plaintiff's conduct during discovery, including the fact that he deleted and hid Facebook posts. Defendant also proposes that the Court instruct the jury to infer that Plaintiff did these things because he believed that this information would hurt him and help Defendant. For the reasons discussed above, the Court will not issue additional instructions regarding Plaintiff's conduct during discovery.

### XI. Defendant's Motion in Limine No. 6

Plaintiff's complaint concerns two incidents while working for Defendant that allegedly caused Plaintiff to suffer back pain and seek medical treatment, one incident occurring in 2016 and one occurring in 2017. On September 10, 2021, the Court dismissed Plaintiff's claim regarding the 2016 incident. Defendant now moves to exclude evidence that his 2016 injury was a "workplace" injury and that Defendant "assigned Plaintiff work beyond his physical capabilities following the alleged 2016 workplace injury." (ECF No. 245, PageID.2499.)

It is not entirely clear what evidence Defendant seeks to exclude and why. Plaintiff's 2016 injury is part of the history of the condition of his back, which Defendant will undoubtedly explore at trial. If Defendant introduces evidence of this incident, the jury can hear the circumstances surrounding it, including the fact that it occurred at his work, without unfairly prejudicing

15

Defendant. However, Plaintiff will not be permitted to argue or infer that this was a "workplace injury" for which Defendant is responsible.

In addition, evidence that Defendant assigned Plaintiff to work beyond his physical capabilities after the 2016 incident is clearly relevant to Plaintiff's claim about the 2017 incident, particularly to the extent Plaintiff claims that his assigned work on the day of his injury in May 2017 was beyond his physical capabilities. Without more specific information about the evidence at issue, the Court cannot fairly conclude that it is irrelevant or should be excluded. Thus, Defendant's motion will be granted with respect to the "workplace injury" aspect and denied in all other aspects.

An order will enter consistent with this Opinion.

Dated:  September 30, 2021                    /s/ Hala Y. Jarbou
                                              HALA Y. JARBOU
                                              UNITED STATES DISTRICT JUDGE